## Murphy's Estate.

*Wills—Construction—Direction to trustees to continue business—Direction to turn business over to testator's son on attaining twenty-five, if trustees are then satisfied of his capacity to run it.*

1. Under a direction to trustees to continue testator's business "so long as in their judgment it is to the best interests of the estate for them to do so" and divide the profits among the family in specified proportions, with power to turn the business over to testator's son on his attaining twenty-five, if, in their unanimous judgment, he should then be competent to carry it on with success, the son does not acquire a vested interest in the business on attaining twenty-five, since the direction to turn it over to him is coupled with the further direction to divide the profits and is merely the means to that end. Aside from this, the son's right on attaining twenty-five to have the business placed under his control and management depended upon whether the trustees, in the exercise of their discretion, believed he was competent to conduct it.

2. *Semble.* A direction to trustees to carry on the business of a decedent does not imply a power in them to carry it on indefinitely. In the instant case, therefore, the business was awarded to the trustees to consider the advisability of a sale.

*Devise of testator's residence and contents by street number—Properties in rear not included.*

3. The devise of his residence and contents by testator to his widow by street number, the property being complete in itself and separated by a fence from properties in the rear abutting on a street parallel to that on which the residence abuts, which properties had been rented by him to different tenants, does not include the properties in the rear.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1917, No. 160.

GEST, J. Auditing Judge.—William M. Murphy died on Aug. 1, 1916, leaving a widow, Jane M. Murphy, and a will admitted to probate on Aug. 10, 1926, the provisions of which, so far as they are material, are as follows:

"Third. I direct my Executors and Trustees hereinafter named to continue and carry on the business heretofore carried on by me under the name of Matthew Murphy & Son, at 3rd and Cumberland Streets, Philadelphia, so long as in their judgment it is to the best interest of my estate so to do, with power to my said Executors and Trustees to turn over said business, together with the machinery, buildings, etc., in connection therewith, unto my son Matthew J. Murphy when in their unanimous judgment and conclusion they may have deemed and considered my said son competent and able to carry on and make a success of my said business, the said business in no event, however, to be turned over to my said son until after he has arrived at the age of twenty-five years. The profits derived from carrying on said business to be divided among my family as follows: One-fifth of said profits to be paid to my beloved wife Jane M. Murphy; one-fifth of said profits to be paid to my daughter Elizabeth R. Smith; one-fifth of said profits to be paid to my daughter Mary C. Wilson; one-fifth of said profits to be paid to my daughter Anna C. Murphy. The remaining one-fifth to be added to the trust hereinafter provided for my son Matthew J. Murphy."

And his residuary estate he devised as follows: In section 1 he provided:

"I give my house, together with its entire contents, situate and known as No. 2124 North Hancock Street, Philadelphia, to my beloved wife, Jane M. Murphy, absolutely."

And in section 2:

"I give and bequeath unto my daughter Elizabeth R. Smith the house in which she now resides, known as No. 2141 North Howard Street, together with the three small properties adjoining in the back."

Murphy's Estate.

Sections 3, 4 and 5 of the residuary clause are not material, and in section 6 the testator devised one-half of the remainder of his estate to his wife, Jane M. Murphy, absolutely, and the residue of his estate he devised to his executors and trustees in trust to divide the same into four equal parts, and one part thereof to transfer to his daughter, Elizabeth R. Smith; one-fourth to transfer to his daughter, Anna C. Murphy; one-fourth to hold in trust and pay the income to his daughter, Mary C. Wilson, for her life, and at her death to pay the income to his grandson, William R. Wilson, for life, and at his death to transfer the same to such child or children as he shall leave surviving, share and share alike, with further provisions in case he should leave no child or children him surviving; and the remaining one-fourth part to his trustees to invest for the benefit of his son, Matthew J. Murphy, as therein provided; and the testator directed one-half of the principal to be paid to his son on his attaining the age of twenty-five years, and the remaining one-half when he shall have reached the age of thirty years. Should his son not live to receive the whole or any part of the principal, he directed that the share from which his son, Matthew J. Murphy, derived the income should be held by his trustees and the income thereof be used for the maintenance and support of any child or children he might have. The testator further provided: "Should he die before having received the whole of the principal and leave no child or children him surviving, then such portion to pass under the intestate laws as though I had died intestate as to it."

Matthew J. Murphy having died without issue on June 9, 1923, the devolution of his share was considered by the present Auditing Judge in his adjudication filed Oct. 29, 1925, on the account of the trustees for Matthew, and it was therein decided that the persons entitled under the intestate laws should be ascertained as of the death of the testator, and, consequently, the estate held in trust for Matthew J. Murphy was awarded, one-third to Jane M. Murphy and one-sixth to each of Elizabeth R. Smith, Mary C. Wilson, Anna M. Lackie and Estelle L. Murphy, administratrix of the estate of Matthew J. Murphy, deceased.

Jane M. Murphy, widow of the testator and one of the trustees, was dismissed by the court on Feb. 11, 1920, and since then the present accountants have acted as trustees without her, and have filed this account of their conduct of the business and their management of the estate. Jane M. Murphy, the widow, and Mrs. Smith, Mrs. Wilson and Mrs. Lackie, the three daughters of the testator, are living. Matthew J. Murphy, his son, died on June 9, 1923, intestate and without issue, leaving a widow, Estelle L. Murphy, who is the administratrix of his estate. Matthew J. Murphy attained the age of twenty-five on Oct. 15, 1921.

The account was restated and separated into accounts of real estate and of personalty, which latter account includes the business of the testator, that, namely, of the manufacture of tape, carried on by the testator before his death and by the trustees thereafter, at Third and Cumberland Streets, which premises were owned by the testator.

### Account of personal estate.

Sundry claims were made as follows:

1. Mr. Hogeland, representing Estelle L. Murphy, administratrix of the estate of Matthew J. Murphy, claimed that the decedent's business should be awarded to his client on the ground that Matthew J. Murphy had a vested interest in it and the trustees should have "turned it over" to him at the age

of twenty-five, which age he attained on Oct. 15, 1921, in accordance with paragraph three of the will above quoted.

In my opinion, the claim is entirely without any substantial foundation, as appears from the construction of the will, as well as from the facts as they appeared in evidence. Paragraph three contains testator's instructions for the "carrying on" of the business and the division of the profits made in it, and it is impossible to construe it as an absolute bequest to Matthew of the said business. There is merely a power given to the trustees to determine if and when Matthew, in their judgment, is "competent and able to carry on and make a success of the business," to "turn it over" to him," which means merely that Matthew, if and when competent, is to carry on the business in their stead. The direction to carry on the business is coupled with the direction to divide the profits, and is merely the means to the end. If the testator meant to give it to his son, he would have said so, and to "turn it over," in this connection, cannot have such a meaning.

The cases cited by Mr. Hogeland are readily distinguishable. In Millard's Appeal, 87 Pa. 457, for example, the testator gave $30,000 to his trustee to pay over the income to his son, Joseph, and in case Joseph should be sober and industrious, the trustee was authorized to pay the legacy, in whole or in part, to him as the trustee might deem right and proper. Joseph having died, the administrator of his estate was held entitled to the fund, and naturally enough, for there was no gift to any one but Joseph of either the income or principal of the fund. The other cases cited are similar and may be likewise distinguished.

But, aside from all this, the testimony showed clearly enough, and more than clearly enough, that the trustees did not exercise their discretion in favor of Matthew and could not have done so, in view of Matthew's dissolute and profligate conduct. It is not necessary to repeat the uncontradicted testimony, which showed that Matthew was entirely "unable to carry on the business and make a success of it." This claim is dismissed.

2. Certain objections were made respecting the account, but at the conclusion of the audit counsel for the parties entered into an agreement [in regard to these matters].

3. It appears that the business for some time was run at a loss, though on the whole it has been profitable. The remaining trustees, and apparently the parties in interest, are of opinion it should be liquidated. The three daughters, being three of the five persons interested, do not complain of its management by the remaining trustee, but desire that the court should not compel an immediate sale. This would not be an appropriate time to make any order in the premises, but the Auditing Judge may add his personal doubt whether the directions in the will to continue to carry on the business can be understood to have meant indefinite continuance: Kelly's Estate, 27 Dist. R. 349.

The award of the business will be made to the trustees under the will; its sale to be considered by them under the advice of their learned counsel.

The question was also argued in this connection whether the proceeds of the business when sold should be distributed in fifths, according to the division directed in the will of the profits of the business, or whether the proceeds should be distributed as part of the residuary estate, one-half to the widow, Jane M. Murphy, and one-half for the benefit of the four children of the testator. In other words, the question is whether the gift of the profits of the business is equivalent to a gift of the business itself or of its proceeds when sold.

Murphy's Estate.

In my opinion, this question does not arise at the present time, but remains for future determination when the business is sold and its proceeds brought before the court in a future account, at which time there will be also considered the fifth paragraph of the agreement of counsel above mentioned respecting the indebtedness of the business to the general estate, stated to be $11,496.47.

### Account of real estate.

By his will, in section 1 of the first residuary clause, the testator provided: "I give my house, together with its entire contents, situate and known as No. 2124 North Hancock Street, Philadelphia, to my beloved wife, Jane M. Murphy, absolutely." The account includes rents of premises Nos. 2123 and 2125 Palethorp Street, in the rear of No. 2124 North Hancock Street, and these rents were claimed by Jane M. Murphy on the ground that the devise of No. 2124 North Hancock Street included these properties. By deed dated Dec. 22, 1900, recorded Dec. 24, 1900, in Deed Book J. V. 233, page 39, the executors of Sebastian Ruettler conveyed to William M. Murphy, the testator, premises on the west side of Hancock Street, 244 feet south of Susquehanna Avenue, containing thirty feet in front on Hancock Street and extending in depth westward of that width parallel with Susquehanna Avenue 109 feet to Palethorp Street, and the deed continued: "Being the same lot of ground (the buildings and improvements having since then been thereon erected) which Samuel Stoneback and wife, by indenture dated April 11, 1871," conveyed to Sebastian Ruettler in fee.

The testimony showed that No. 2124 North Hancock Street was the family residence of the testator, and at the time of his death, in 1916, the Palethorp Street houses were separately rented to tenants and have been since so rented, and at no time were they occupied by members of the Murphy family. The Palethorp Street houses were erected on the property when Murphy purchased it, and all the houses are and always were separately assessed for taxation.

It appears from the testimony and from photographs which were also produced that there is a fence in the rear of the yard of the Hancock Street house about five feet ten inches high, and there is no physical connection between the properties. Each building on Palethorp Street has its own yard and a separate gate leading into an alley, and there is also a gateway from the Hancock Street house into the alley, of which, however, no use was made.

The court has jurisdiction in the case only because the trustees have collected the rent of the Palethorp Street houses and have charged themselves with them in the account, which, if Mrs. Jane M. Murphy's claim is valid, belong to her: Tyson's Estate, 191 Pa. 218; Schadt's Estate, 282 Pa. 523; Dauler's Estate, 230 Pa. 204. None of the parties in interest object to the jurisdiction.

It was suggested by me at the audit that a survey should be obtained from the District Surveyor, which would give an accurate description of the premises, but that has not been furnished. I will decide the case on the testimony presented.

In my opinion, when the testator devised No. 2124 North Hancock Street, he had definitely in mind the house in which he had resided with his family and in which he supposed his wife would naturally continue to reside after his death, and it will be noted that the devise included the contents of the house. The house was complete in itself, and the Palethorp Street houses were not necessary to its enjoyment. They were separate and distinct, rented to different tenants, and not even physically connected. The house is devised by a simple reference to street and number, according to our custom in Phila-

## Murphy's Estate.

lelphia, Flanigen *v.* Philadelphia, 51 Pa. 491, and see Shattuck *v.* Cunningham, 166 Pa. 368, as contrasted with the present case.

In support of the widow's claim to the Palethorp Street houses, there was cited Kelly's Estate, 8 Dist. R. 51, where a devise of a house, designated by street and number, was held to include the entire lot, on the back part of which the testator had erected a small house. There was no residuary clause in the will, the ownership of the devisee had been acquiesced in by all parties for fourteen years, and the case was decided on the principle that there was a legal presumption against intestacy. In McAfee *v.* Magee, 4 Penny. 94, the question submitted to the jury in an ejectment was the manner in which the testator regarded and treated the property claimed to be included in the devise, and the case is not helpful in the determination of the present question.

Mr. Sullivan called attention to the fact that the testator also devised to Elizabeth R. Smith premises No. 2141 North Howard Street and included the three small properties adjoining on the back, all of which properties were included in one description in the deed by which Murphy took title. This, it is argued, showed, by way of contrast, the testator's intention with respect to the devise of the Hancock Street house. Without, however, laying any special stress upon this, I am of opinion, from the other evidence in the case, that the devise of No. 2124 North Hancock Street is confined to the house so numbered, and does not include the Palethorp Street properties. The claim of Jane M. Murphy for the rents is dismissed.

*Maurice A. Hogeland,* for exceptions; *John J. Sullivan,* contra.

HENDERSON, J., Oct. 27, 1927.—We have carefully examined the record in this case and briefs of argument submitted by counsel and are of opinion that the Auditing Judge was correct in disposing of the questions involved and for the reasons given by him.

The exceptions are dismissed and the adjudication is confirmed absolutely.